Marsh, Appellant, *v.* Erhard et al.

Argued May 27, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*William J. Oliver*, with him *Walter W. Harris* and *O'Malley, Harris, Harris & Warren*, for appellant.

*John R. Edwards*, Solicitor, Scranton School District, with him *Vance L. Eckersley* and *James W. McNulty*, for appellees.

Opinion by Mr. Chief Justice Maxey, June 25, 1946:

This is an appeal from the decree of the court below refusing a preliminary injunction asked by the plaintiff taxpayer to restrain the School District from using for expenses during the present fiscal year of 1945-1946 moneys derived or to be derived from the tax levy for the fiscal year of 1946-1947, this levy being based on a budget adopted by the Board of School Directors for the ensuing fiscal year.

This litigation arises out of an anomalous situation which only the state legislature has the power to correct

and which applies only to cities of "Second class A" (Scranton being the only city within this classification). On account of an act of assembly the date of the levy and collection of school taxes of Scranton does not synchronize with the date of the fiscal year for school districts of the second class, Scranton being one of such districts. As a result of this situation over $968,000 of taxes collected under the 1945-46 levy was used during the fiscal year 1944-45. A footnote [1] shows the school tax levies for seven annual periods during which the administrative expedient now complained of has been resorted to.

The "situation" referred to arose as follows: In 1935 the legislature passed a single tax collection Act [2] for cities of the second class A, changing the time of the collections of all taxes in such cities so that they would be collected at the same time upon a single tax statement at the one place, effective after January 1st, 1937. By subsequent amendments (Act 28 July 1941, P. L. 569, 53 P.S. Sec. 10796 and 10797), the mailing date of all tax statements was fixed as not later than January 15th of each calendar year. The effect of this legislation on the Scranton School District was to compel the directors to levy school taxes at a time prior to the first of each calendar year for the fiscal year beginning on the first Monday of the ensuing July. Because payment of taxes before January 31 provided for discounts, and taxes be-

---

[1]

| Amount | Tax Levy of | Used during fiscal year of |
|---|---|---|
| $ 823,190.93 | 1939-1940 | 1938-1939 |
| 1,032,048.98 | 1940-1941 | 1939-1940 |
| 1,090,210.60 | 1941-1942 | 1940-1941 |
| 1,121,768.90 | 1942-1943 | 1941-1942 |
| 1,187,567.26 | 1943-1944 | 1942-1943 |
| 1,115,635.13 | 1944-1945 | 1943-1944 |
| 968,692.96 | 1945-1946 | 1944-1945 |

[2] Act 26 April 1935, P. L. 90, 53 P.S. 10793, as amended by Act of 2nd July 1937, P. L. 2791, 53 P.S. 10797, and Act of April 11. 1939. P. L. 20.

came delinquent and carried penalties after March 31, a substantial part of the entire tax duplicate was generally in the treasury of the School District many months before the beginning of the fiscal year for which the taxes were paid. This condition first arose in 1938 and continued every year thereafter. as is indicated in the table designated footnote 1.

At about this same time the School Code was amended [3] so that the Directors were required, at or before the time of levying the annual school taxes, to make up a budget "of the amount of funds that will be required by the school district . . . for the following fiscal year", and to apportion the budget "to the several classes of expenditures of the district . . .", and it was provided that "the total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and state appropriation. . . ." The Court below found that it "makes it necessary for the Directors of the Scranton School District to adopt a budget in November or December of the calendar year preceding the year in which the fiscal year commences for which the budget is adopted." This means that within four months after a fiscal year begins, i.e. in July, August, September or October, the Directors must start a budget for the fiscal year which begins on July 1st of the next year. At the same time the Directors levy a tax to provide necessary revenue for the authorized expenditures, the collection of which starts about six months before the fiscal year begins, i.e. before July 1st. The taxes are levied upon the basis of the *calendar* year and the budget is made on the basis of the *fiscal* year; this results in "staggered" bookkeeping and awkward financing, but in no loss to the district.

The court below correctly describes in the following language the school district's handling of its dilemma: "What the operation does, so far as fiscal year financing

---

[3] Acts of July 18, 1935, P. L. 1192 and May 13, 1937, P. L. 605, Sec. III, 24 P.S. Sec. 610..

is concerned, is to incur a deficit, but if the operation were considered on a calendar basis, it would be apparent that the expenses of the calendar year would be met from revenues of that year. What the Directors have really done by the reduction of assessments in the two previous years is to arrange their finances on a calendar year basis rather than on a fiscal year." The court then says: ". . . we can see nothing in the law which prohibits the practice. Neither on the facts nor the law is the case so clear in our opinion as to justify the intervention of equity". The court then correctly sets forth the alternatives which would confront the School Directors if the court of equity would declare "that the District has no legal right to expend moneys collected under a levy made to assure revenue for a fiscal year". One of these alternatives would be "to borrow money on a temporary loan against current taxes", another would be to make "temporary loans on the security of uncollected revenues for the fiscal year 1945-1946", another would be to correct the deficit "by borrowing on bonds under the provisions of the Act of 1941, P. L. 159, 53 P.S. Sec. 2011.502, another would be to "curtail the operations of the School District by suspending them during the period for which no revenue is available." The court then characterizes the first three of these alternatives as "impracticable", and the fourth as "unthinkable from the standpoint of the interests of the citizens". With all this we agree.

The only portion of the opinion of the court below with which we are not in accord is as follows: "A budget is a device to control expenditures but in itself it is not an instrument or an agency which provides revenue; hence there is no logical connection between a budgeting of expenses of a public agency and a levy of taxes to assure revenue to meet these expenses." We view the levy of taxes and the budgeting of expenses for school purposes as "connected" both logically and legally.

Their inter-relationship is obvious. The Code [4] providing for the annual budget by school districts expressly provides that *"the* total amount of such budget shall not exceed the amount of funds, *including the proposed annual tax levy* and State appropriation, available for school purposes in that district." (Italics supplied). This constitutes an express prohibition of the adoption of a budget the total amount of which exceeds the tax levy and State appropriation.

Municipal bodies, like courts and other agencies of government, must construe laws so as to make them workable. (See *Watson v. Witkin,* 343 Pa. 1, 22 A. 2d 17.) In *M'Culloch v. Maryland,* 4 Wheat. 316, 421, Chief Justice MARSHALL, speaking for the Supreme Court of the United States, declared that it was a "sound construction" of the U. S. Constitution *so* to construe it as to "allow to the national legislature that discretion with respect to the means by which the powers it [the constitution] confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people". He then added a declaration which with the words "applicable legislation" substituted for the words "the constitution", and the word "proper" substituted for "constitutional" may well have been used as a canon of construction for the guidance of the Scranton School Directors in the situation in which the somewhat conflicting applicable acts of assembly placed them. As so paraphrased, Chief Justice MARSHALL'S added declaration reads as follows: "Let the end be legitimate, let it be within the scope of the" applicable legislation "and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the" applicable legislation "are" proper.

The decree is affirmed at appellant's cost.

---

[4] Act of May 13, 1937, P. L. 605, Section III, 24 P.S. 610.