# Bright v. City of Sharon

*Leo H. McKay*, for plaintiff.
*Nathan Routman*, for City of Sharon.

ROWLEY, P. J., September 30, 1949.—This is a case stated to determine plaintiff's right to a refund of the amounts withheld from his salary by his employer and by that employer paid over to the City of Sharon in compliance with a city ordinance which imposed a tax upon income earned within the city by nonresidents. This tax was imposed by the city under authority of the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1. Numerous other claims upon identical facts await disposition of the instant question.

Plaintiff, a resident of the School District of the Township of Hickory, employed within the City of Sharon, rests his claim for refund upon payment by him of an identical tax for the concurrent period to that school district. The school district imposed such tax also under authority of the Act of June 25, 1947.

Section 5 of the Act of June 25, 1947, 53 PS §2015.5, provides that payment of a tax on salary to a political subdivision by residents thereof shall be allowed as a deduction from the liability of such persons for any other like tax imposed by any other political subdivision under the authority of the Act of June 25, 1947.

The City of Sharon, the School District of the Township of Hickory, and five other tax districts constitute a closely knit community. These seven districts joined in adopting uniform regulations governing the collection of taxes imposed by authority of the Act of June 25, 1947.

Article III(*B*) (*b*) of these uniform regulations, adopted to make effective the deduction specified in

section 5 of the Act of June 25, 1947, provides that where the taxpayer who resides in one taxing district and is employed in another, pays the tax to the district of his residence, he may produce his receipt therefor to the receiver of taxes for the district of his employment and thereupon the receiver shall refund the amount from the tax theretofore deducted by his employer and paid over to the taxing district of his employment.

Plaintiff paid the tax to the school district of his residence and produced his receipt to the Receiver of Taxes for the City of Sharon. The city refused to make the refund, contending that the tax paid by plaintiff was not lawfully imposed by his school district and therefore did not constitute an allowable deduction against the tax imposed by the City of Sharon.

The School District of the Township of Hickory, hereinafter called "Hickory District", adopted three resolutions with respect to the tax authorized by the Act of June 25, 1947.

A Resolution of February 25, 1948, imposed upon residents a tax of seven mills upon salaries, wages, etc., earned on and after April 1, 1948.

A Resolution of June 29, 1948, imposed an additional tax upon salaries, etc., of three mills effective August 1, 1948, and expressly declared this to be in addition to the levy of seven mills and that the levy should be 10 mills on income earned after August 1, 1948.

A third resolution, adopted July 12, 1948, levied school taxes "for the school year beginning the first Monday of July, 1948". This resolution recited that the budget theretofore adopted requires that there be raised by taxation $10,821 for debt retirement and $229,677 for general school purposes. The resolution then levied the following:

4½ mills on real estate for debt retirement.

20½ mills on real estate for general purposes.

A per capita tax of $5.

10 mills on the earned income of residents and on the income of nonresidents earned in the district "as authorized and provided by the Resolutions adopted by the said Board February 25, 1948, and June 29, 1948, respectively".

Briefly stated, defendant's challenge to the validity of the Hickory District tax rests upon the following contentions:

(a) School taxes must be levied in the months of April or May, whereas the original resolution was adopted in February.

(b) The Resolution of February 25, 1948, was a second levy within a fiscal year, which is expressly prohibited by the School Code.

(c) The annual budget had not been prepared when the Resolution of February 25, 1948, was adopted, whereas the School Code requires that the budget be adopted at or before the date of levying the school tax.

(d) If the levy of February 25, 1948, is to apply to the fiscal year 1948-49 (as claimed by plaintiff), then the Resolution of June 29, 1948, constituted a second levy in the same year.

(e) The levy of three mills by the Resolution of June 29, 1948, unbalanced the budget that had been adopted on April 19, 1948, which budget remained unaltered.

(f) The Hickory District undertook to collect a tax upon income arising before the beginning of the fiscal year for which it was assessed.

(g) Plaintiff's credit, if any, against the tax imposed by the City of Sharon would be limited to the amount paid to his own district after the first Monday of July 1948, the beginning of the fiscal year of that school district, and could be applied only against the amount of taxes imposed by the City of Sharon for a like period (not for a preceding period).

*Discussion*

The ordinance of the City of Sharon adopted February 24, 1948, imposed a tax of seven mills upon salaries, wages, etc., earned on and after April 1, 1948, by nonresidents of the City of Sharon for work done or services performed in the City of Sharon.

On February 25, 1948, the Hickory district adopted a resolution imposing a tax of seven mills upon, inter alia, salaries and wages earned on and after April 1, 1948, by residents of that school district.

Both the city ordinance and the Hickory district resolution required the employer of a taxable to deduct monthly or more often the tax of seven mills on each dollar of compensation due the employe, and to make a return of such deductions to the taxing district within 30 days after June 30, 1948, and within 30 days after the end of each succeeding quarter.

On June 29, 1948, the School District of the City of Sharon, under authority of the Act of June 25, 1947, also adopted a resolution levying a tax of three mills upon salaries, etc., of nonresidents earned within the City of Sharon.

On the same date the Hickory district imposed an additional levy of three mills upon salaries, etc., earned by residents (the second resolution hereinbefore referred to).

The industry of opposing counsel has supplied us with thorough and extensive briefs, to which we shall first direct our attention.

Plaintiff submits that three questions are involved. Defendant's brief discusses these questions in the order submitted by plaintiff. We shall do likewise.

"1. The City of Sharon does not have a standing to question the legality of the Hickory Township School District Resolutions."

In support of this proposition, plaintiff urges that the Act of 1947 specifies the only time and manner in which a resolution imposing the tax can be attacked. Section 3 of that statute provides for an appeal within 30 days by taxpayers representing 25 percent of the total valuation of real estate or by taxpayers not less than 25 in number. Obviously, the city was not included in either group authorized to appeal.

Plaintiff further argues that the city has no standing in equity by virtue of the constitutional provision which declares that no person shall be deprived of property without due process of law, because a municipality is not a "person" within the meaning of the constitutional provision.

It seems clear to us that only taxpayers are required to make their attack in the time and manner specified by section 3 of the Act of June 25, 1947. The section specifically names the persons to whom it is directed as "taxpayers". Furthermore, no right of the city could have been affected within 30 days of the adoption of the resolution.

If the city is barred from attacking the validity of the resolution of the school district (a matter not entirely free of doubt), it is for reasons other than the provision of section 3 of the Act of June 25, 1947.

Plaintiff quotes from Bartron v. Northampton County, 342 Pa. 163, 168:

"There has been developed in this Commonwealth a doctrine, based on an early statute (Act of 1806), that where a remedy or method of procedure is provided by an Act, its provisions shall be strictly pursued and exclusively applied."

We think this principle is not applicable here. Neither remedy nor procedure has been provided by the Act of June 25, 1947, for a party not a taxpayer.

In our opinion, there is a burden upon plaintiff to establish payment of a valid tax to the school district of his residence.

Plaintiff presents the second question thus,

"2. The tax upon plaintiff's income from April to June was lawfully levied."

Plaintiff says that the primary contention of defendant is that the resolution of the Hickory district adopted February 25, 1948, is unlawful because it purports to levy a second tax within the current school year of (1947-1948) in violation of section 502 of the School Code of May 18, 1911, P. L. 309, 24 PS §382. Section 502 of the School Code of May 18, 1911, P. L. 309, as amended (24 PS §382) provides:

"There shall be but one levy of school taxes made in each school district in each year, which shall be assessed, levied, and collected for all the purposes provided in this Act."

By Section 537 of the School Code, it is provided:

"In all school districts of the second, third, and fourth class, all school taxes shall be levied and assessed by the board of school directors therein, during the month of April or May each year, for the ensuing fiscal year."

Inasmuch as the fiscal year begins in July, it is clear that the school tax may be levied in a current year for the ensuing year.

An earlier statute required levy of school taxes before the first day of July. In Walker v. Edmonds, 197 Pa. 645 the tax was not levied until after the prescribed date. In a proceeding attacking the late levy the Supreme Court said,

"The Court (below) also ruled that as the Act of Assembly required that the determination of the amount to be levied, and the levy itself, should be made by the school directors before July 1; (that) a strict compliance with its requirements in this respect was neces-

sary, and without it there could be no legal assessment of school tax.

"The Act is clearly not mandatory but only directory in this respect, and if the only question were as to whether or not the levy had been made at the proper time, we would have no difficulty in sustaining it.

"Where action is required to be taken within a certain time, the mere failure of an officer or of a body to act within the set time is not fatal, and the requirement as to time may be held to be directory. This is in accordance with the ruling in Gearhart v. Dixon, 1 Pa. 228. In that case the school directors were required to levy the tax on or before the first Monday in May. This Court said, in that connection,

" 'The Act of Assembly is directory as to the time, and if by accident or from any other cause, this duty was omitted, it could be performed in any reasonable time thereafter.' See also Com. v. Griest, 196 Pa. 416, and cases therein cited.

"In the statute under consideration there were no negative words, and the general rule is, that when such a provision in regard to the time when an act is to be performed is introduced, unless there are negative words in the statute providing that the action shall not be taken afterwards, such a provision is to be taken as directory."

York & Foster, Inc., Tax Assessment Case, 163 Pa. Superior Ct. 602, 605, declares:

" 'Whether a particular statute is directory or mandatory does not depend upon its form, but upon the intention of the legislature, which is to be ascertained from a consideration of the entire Act, its nature, its object, and the consequences that would result from construing it one way or the other . . .

" 'We are not unmindful that statutes regulating the assessment or levy of taxes must be given a mandatory construction, if their purpose is to protect the tax-

payer; but if the statute is simply intended to establish a uniform system of procedure and to promote dispatch, and if non-compliance does not injure the taxpayer, the statute is to be construed as directory.' "

The foregoing principle has been consistently accepted by our courts for more than a century.

The levy made by the Hickory district applied only to property which came into existence after April 1, 1948, and the tax produced by the levy payable to the school district by an employer did not become payable to the school district until 30 days after June 30, 1948, and if payable by the employe did not become due until March 15, 1949 (both dates within the new fiscal year.) Therefore, it seems clear enough that the levy was a levy for the fiscal year 1948-1949 and is to be examined as such. We think it cannot be viewed as a second levy for the year 1947-1948. Moreover, the seven-mill levy was in no sense a second levy for the fiscal year 1948-1949. Clearly it was the first of all the levies for that year.

In Marsh v. Erhard, 354 Pa. 570, the school district had been using money derived from the tax levy for the fiscal year 1946-1947 to pay expenses of the fiscal year 1945-1946. The Supreme Court thus describes the situation in the School District of the City of Scranton:

"This means that within four months after a fiscal year begins, i. e. in July, August, September or October, the Directors must start a budget for the fiscal year which begins on July 1st of the next year. At the same time the Directors levy a tax to provide necessary revenue for the authorized expenditures, the collection of which starts about six months before the fiscal year begins, i. e. before July 1st. The taxes are levied upon the basis of the *calendar* year and the budget is made on the basis of the *fiscal* year."

In the Marsh case, supra, plaintiff sought a decree to restrain the Scranton School District from using for

expenses during the fiscal year of 1945-1946 moneys derived from the tax levied for the fiscal year of 1946-1947. The situation arose because a statute which provided for a single collection upon a single statement of all taxes within the city did not synchronize with the date of the fiscal year for that school district. The Supreme Court refused to enjoin the practice, stating:

" 'What the operation does, so far as fiscal year financing is concerned, is to incur a deficit, but if the operation were considered on a calendar basis, it would be apparent that the expenses of the calendar year would be met from revenues of that year. What the Directors have really done by the reduction of assessments in the two previous years is to arrange their finances on a calendar year basis rather than on a fiscal year.' We can see nothing in the law which prohibits the practice."

Obviously, levy of school taxes upon the basis of *calendar* year and the making up of a budget on the basis of a *fiscal* year was not a strict compliance with the School Code. The practice was condoned by the Supreme Court ex necessitate. Thus it is evident that under some circumstances departure from the School Code is not fatal.

Defendant further complains that the levy of the Hickory district is invalid because made before preparation of the annual budget.

In Marsh v. Erhard, supra, the Supreme Court declared:

"We view the levy of taxes and the budgeting of expenses for school purposes as 'connected' both logically and legally. Their inter-relationship is obvious. The Code providing for the annual budget by school districts expressly provides that 'the total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and State appropriation, available for school purposes in that district.' This

constitutes an express prohibition of the adoption of a budget the total amount of which exceeds the tax levy and State appropriation."

The original School Code of 1911, P. L. 309, in section 563 directed that the board of school directors, *"At or before the time of levying the annual school taxes*, prepare an approximate estimate of the amount of funds that will be required by the school district in its several departments for the following fiscal year."

This section of the code was amended by the Act of July 18, 1935, P. L. 1192, which provided that the budget should be prepared 30 days prior to its adoption. The amending statute struck from the earlier act the words, "At or before the time of levying the annual school taxes."

The amended statute, as subsequently amended (24 PS §610), retained the prohibition that the budget should not exceed the aggregate of "the proposed annual tax levy" and the State appropriation.

It is true, as urged by defendant, that the term "proposed" tax levy suggests futurity; however we believe the word is not limited to that meaning. It is implicit in the statute that the budget be fixed with rather exact knowledge of the amount to be received in taxes. While it would seem more logical and more orderly to prepare the budget first, no court would be likely to invalidate a levy solely because it was fixed before adoption of the budget provided that the inter-relationship between budget and levy was observed by the school board in determining the amount of each.

Defendant emphasizes that the tax imposed by the Hickory district was effective April 1st, whereas the budget was not adopted until April 19, 1948. The annual requirements for the Hickory district approximate $250,000. Although a formal budget had not been adopted on April 1st, the effective date of the levy, it was, of course, obvious then that the levy im-

posed on salaries, etc., would provide only a small percent of the requirements. It cannot be reasonably inferred that the school board levied the tax without regard to estimated expenditures. In our opinion, the lack of a formal budget was not an insuperable objection to the validity of the levy.

Defendant also argues that even if the original levy of seven mills of February 25, 1948, were valid, the levy of an additional three mills by the resolution of June 29, 1948, cannot be sustained, both because no corresponding change was made in the balanced budget theretofore adopted and because the levy of three mills was a second levy upon the same property. We think it must be conceded that the levy of June 29th constituted a second levy and that no corresponding alteration of the budget was made.

Defendant assumes that the budget as adopted by the Hickory district on April 19th was balanced, that is, that the anticipated revenue from taxes would be adequate to provide for necessary disbursements without the additional levy of three mills. It may well be that in adopting the additional levy of three mills on June 29, 1948, the Hickory district was principally influenced by the fact that the Sharon School District was on the same date imposing an identical levy. However, it must be noted that the amount to be realized from the seven-mill tax was altogether uncertain. The product of a levy on real estate can be anticipated almost exactly, and a fairly accurate estimate of per capita tax can be made, but there was practically no basis for estimating the amount to be produced by this new tax. A change in the existing budget (when the additional three mills was levied) predicated solely upon the amount expected from the tax upon salaries, etc., would scarcely have been required in the exercise of sound business judgment.

The controlling question in the instant case is whether the tax paid by plaintiff to the Hickory School District was lawfully levied. This main question comprehends three others, viz.:

1. Had the Hickory district the requisite power and authority to levy a tax by the resolutions of February 25, 1948, June 29, 1948, and July 12, 1948, in view of the requirement of the School Code that the tax be levied in April or May?

We think it may be said that provision for a uniform fiscal year for all school districts and a similar date for the tax levy was intended to facilitate supervision of the schools by the Commonwealth. Uniform regulations for all districts simplify administration by the Commonwealth and tend to orderly procedure by the school directors who are but agents of the Commonwealth. It is not apparent that any taxpayer was prejudiced by the board's failure to comply with the statute in this respect.

Upon the authority of Walker v. Edmonds, 197 Pa. 645, and York & Foster, Inc., Tax Assessment Case, 163 Pa. Superior Ct. 602, hereinbefore quoted, we regard the provision of the School Code which requires the levy to be made in April or May, as directory only, consequently the validity of the levy was not impaired by the board's noncompliance.

The second intermediate question is:

2. Inasmuch as the fiscal year 1948-1949 did not begin until July, could the school board lawfully impose a tax for that year to become payable in April, May and June prior to the beginning of the fiscal year?

It is commonly known that, in effect, all taxes are collected upon the basis of a calendar year, although school disbursements are made on a fiscal year. It will likely be conceded that when a taxable pays his school tax he pays for the calendar year, not for parts of two calendar years.

In our opinion, the levy of the tax which became payable in April, May and June can be sustained upon the authority of Marsh v. Erhard, 354 Pa. 570, hereinbefore quoted. In the Marsh case the court said:

"The directors levy a tax to provide necessary revenue for the authorized expenditures, the collection of which starts about six months before the fiscal year begins, i. e. before July 1st. The taxes are levied upon the basis of the *calendar* year and the budget is made on the basis of the fiscal year; this results in 'staggered' bookkeeping and awkward financing, but in no loss to the district. . . .

" 'What the Directors have really done by the reduction of assessments in the two previous years is to arrange their finances on a calendar-year basis rather than on a fiscal year.' . . .

" 'We can see nothing in the law which prohibits the practice.' "

In the Marsh case the Supreme Court said the legislature had placed the school district in a dilemma. To some extent, as we shall hereinafter undertake to point out, the Act of June 25, 1947, created a dilemma for the Hickory district.

3. We come now to the third, and most difficult, intermediate question.

The Hickory district, by its resolution of February 25, 1948, imposed a tax of seven mills upon salaries, wages, etc. On June 29, 1948, it levied an additional three mills upon the identical base.

Can the additional levy be sustained in the face of the legislative injunction that there be but one tax levy in each year?

Defendant has cited Appeal of Taxpayers of Chartiers Township School District, Washington County Common Pleas Court, which held that a tax undertaken to be levied on December 15, 1947, by virtue of the Act of June 25, 1947, P. L. 1145, upon coal mined be-

tween January 15, 1948 and June 30, 1948, was invalid. That opinion cites the statute which requires that all school taxes be levied during April or May, also the requirement that there be but one levy of school taxes in each year. The school board planned to use the revenue from the proposed levy for "repairs, heating, plumbing, and an ash hoist, text books, increase of salaries for janitors, school supplies" etc. The opinion of the court declares: "The statutory permission to revise the annual budget . . . is limited to the one fiscal year and one purpose stated in the Act." (Act of July 5, 1947, P. L. 1266.)

We do not agree, however, that the Act of June 25, 1947, P. L. 1145, is at all limited in its operation by the Act of July 5, 1947, P. L. 1266. We shall make later reference to this point.

Defendant has also cited Appeal of Taxpayers of Township of Snyder, Blair County Common Pleas Court, wherein a resolution of a school district imposing a tax upon wages was declared invalid. The court held the resolution invalid for four reasons. One of the reasons assigned was that section 502 of the School Code requires the levy to be made in April or May of each year.

If the purpose of the legislature in enacting a statute can be readily ascertained, courts ought not to frustrate that purpose for slight or technical reasons.

Prior to enactment of the Act of June 25, 1947, it was commonly known that most municipalities and quasi municipalities, especially school districts, were encountering serious difficulty in meeting the increased costs of operation. There was also widespread complaint that real estate was unfairly burdened by taxes. Concomitantly, there was a somewhat organized, insistent demand for increase of salaries for teachers. The legislature took formal notice of this situation which was rapidly becoming an emergency,

especially with respect to the public schools. When the legislature undertook to act it must be presumed that it was the intention to offer actual relief to school districts and to provide it with a celerity commensurate with the necessities.

The remedial statute was enacted June 25, 1947. Under the rule contended for by instant defendant the school district could obtain no benefit from the act for the fiscal year 1947-1948 because a levy had not been assessed in the month of April or May, and for the further reason that one levy for that fiscal year had already been made prior to its enactment.

Defendant's theory would also seriously curtail the revenue to the school district for the fiscal year 1948-1949. If we adopt defendant's contention, the tax of the Hickory district would be limited to wages or salaries earned after July 1, 1948; thus the school district would be deprived of all income from such sources for the full calendar year 1947 and for the first half year of 1948.

The act declares:

"It is the intention of this section to confer upon such political subdivision the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax. . . ."

If we bear in mind that the legislature intended to provide a new remedy to relieve something of an emergency, we shall not search for an obstacle to prevent the effectiveness of the remedy. The statute in question authorized the school district to levy, assess and collect taxes "on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivision, as it shall determine".

The broad terms of the statute disclaim any intent to limit the operation of this act by the provisions of a statute enacted more than a score of years previously.

The School Code had permitted but one tax levy each year, required the assessment to be levied in April or May, and opened only a limited field for taxation. Those who seek to hitch these limitations upon the act wholly misapprehend the legislative purpose behind this recent statute. If there is a conflict between an earlier statute and a later enactment, the latter must control. We think it is not always necessary to expressly repeal an earlier act or to declare the earlier act amended in order to insure fullest effect for the latest legislative expression. Moreover, authority to impose a school tax is " 'not so much a delegation of the power of taxation . . . as an exercise of it through and by means of chosen agencies' ": Minsinger v. Rau, 236 Pa. 327.

There seems to be some misapprehension as to the significance of certain comments by the Supreme Court in Dunkard Township School Tax Case, 359 Pa. 605. In that case the court sustained a tax levy upon coal mining imposed by the school district on October 14, 1947, notwithstanding that the school district had on August 1st of that year levied a tax on real estate and a per capita tax. In that case the school board had performed two unusual acts. It had imposed an additional tax and had also substantially altered the budget which it had been permitted to adopt only after due public notice (24 PS §610). After the adoption of a budget for the approaching fiscal year, additional appropriations and increased appropriations cannot be made except "to meet emergencies, such as epidemics, floods, fire or other catastrophes".

The Act of June 25, 1947, authorized the tax "for general revenue purposes".

The Dunkard School District imposed the tax under authority of the Act of June 25, 1947, for the special purpose of obtaining funds to pay to its teachers the salaries prescribed by the Act of July 5, 1947, P. L.

1266. The legislature was aware that school districts had fixed their budgets before the new salary statute was to become effective, and it was likewise aware that increased appropriations for salaries could not lawfully be made from the existing budget. Accordingly, the legislature declared in section 1227 of the Act of July 5, 1947:

"In order to pay the additional amounts of salaries provided for by this Act, the board of school directors or board of public education of any school district may for the fiscal year 1947 or 1947-1948, as the case may be, *revise its budget* by increasing its appropriation or appropriations for salaries of professional employes of the school district for such fiscal year."

This section concludes: "The funds, therefor, may be provided from unexpended balances in existing appropriations from unappropriated revenue, if any, or from temporary loans."

We have here simply a grant of authority to alter the existing budget. The concluding phrase as to the source of the required funds added nothing to the act. If the board appropriated additional amounts for salaries, it would, of course, be obliged to provide funds to pay them. The only source of funds in mid-year would necessarily be cash on hand or borrowed money.

It is important to bear in mind that the Dunkard district was undertaking to provide for the increased salaries ordered by the Act of July 5, 1947, but that it did not choose the method of financing which was authorized by the Act of July 5, 1947. Instead, the district proceeded under the Act of June 25, 1947, to impose a tax. Complainants in that case contended that the district was bound to obtain the funds by the methods authorized in the later Act of July 5, 1947. To this the Supreme Court answered:

". . . those methods of securing the additional revenue are made permissive, not mandatory or exclu-

sive; . . . Of course the legislature was also aware that the Act of June 25, 1947, P. L. 1145, had just been passed to give authority to such school districts, for general revenue purposes, to levy, assess and collect taxes on persons, transactions, occupations, privileges, subjects and personal property,—the only limitation being that such taxes should not be imposed on anything which then was or thereafter might become subject to a State tax,—and it was not necessary to repeat or call attention in the Act of July 5, 1947, P. L. 1266, to *that grant of authority.*" . . . (Italics supplied.)

"We see no reason why the School District could not employ the authority thus given (by Act No. 481) to impose the tax here in question." (Parentheses supplied.)

We find no justification for the argument that the Dunkard levy under the Act of June 25, 1947, was sustained by the court because the provisions of the Act of July 5, 1947, reinforced the earlier statute. The later act contains no reference to a tax levy. The Act of June 25, 1947, authorized a new tax for "general revenue purposes". We understand the Dunkard opinion to declare, in essence, only that the proposed use of the funds to be obtained from the tax was a purpose approved by that act. It is true that the Supreme Court, in holding that there was no reason why the school district could not employ the authority to impose the tax to pay the new salaries, took pains to caution:

"it being borne in mind, however, that the statutory permission (of Act No. 515) to *revise the annual budget* and provide for additional revenue (by the methods authorized by Act No. 515) was expressly limited to the one fiscal year and the one purpose stated in the Act." (Italics and parentheses supplied.)

We cannot agree that the one-year limitation contained in the Act of July 5, 1947, limits in any sense the operation of the Act of June 25, 1947, nor does the Dunkard case so imply.

The Commonwealth has the duty of maintaining the public school system. A school board is but an agency of the Commonwealth. The legislature was aware of the responsibility of the Commonwealth, it knew that the school districts were in financial distress, and it could anticipate the grievous consequences likely if the distress was not ameliorated with some degree of promptness. In these circumstances, we think it cannot be said that the Commonwealth by previous legislation has rendered itself impotent to perform an urgent duty. It can be argued with good reason that if the legislature had intended to relieve the Act of June 25, 1947, from the limitation imposed by the prohibition against more than one levy within a year, it would have so declared in clear terms, nevertheless we find the evident purpose of the legislature more persuasive.

"The object of all interpretation and construction of laws is to ascertain and *effectuate* the intention of the legislature." Statutory Construction Act of 1937, P. L. 1019, 46 PS §551. This rule is only a statutory expression of a precept that has immemorially guided the courts in construing statutes.

"Statutes are to be construed so as may best effectuate the intention of the makers . . . though that construction may seem contrary to the letter of the statute": Big Black Creek Improvement Company v. The Commonwealth, 94 Pa. 450.

We find quite pertinent here the following comment by Chief Justice Maxey in Marsh v. Erhard, supra: "Municipal bodies, like courts and other agencies of government, must construe laws so as to make them *workable*." (Italics supplied.)

The chief justice then paraphrased a quotation from Justice Marshall in McCulloch v. Maryland, 4 Wheat. 316, thus:

"Let the end be legitimate, let it be within the scope of the 'applicable legislation' and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the 'applicable legislation' are proper."

This paraphrase, said the chief justice, ". . . may well have been used as a canon of construction for the guidance of the Scranton School Directors *in the situation in which the somewhat conflicting applicable Acts of Assembly placed them.*" (Italics supplied.)

In the Marsh case, as here, it was not possible to give literal effect to two conflicting statutes. We are therefore bound to construe the law to best effectuate the legislative intent.

From the foregoing agreed facts and discussion, we draw the following

### Conclusions of Law

1. The tax of seven mills levied by the School District of the Township of Hickory by resolution of February 25, 1948, was lawfully assessed and is a valid tax.

2. The tax of three mills levied by the School District of the Township of Hickory by resolution of June 29, 1948, was lawfully assessed and is a valid tax.

3. Judgment should be entered in favor of Martin L. Bright, plaintiff, and against City of Sharon, defendant, in the sum of $32.88.

### Order

And now, September 30, 1949, judgment is entered in favor of Martin L. Bright, plaintiff, and against the City of Sharon, defendant, in the sum of $32.88.